[No. 38193-8-I.   Division One.   March 10, 1997.]

VICTORIA ROBERTS, *Appellant,* v. SAFECO INSURANCE COMPANY, *Respondent.*

*Thomas R. Golden* and *Sullivan & Golden,* for appellant.

*Nancy T. McKinley* and *Fallon & McKinley,* for respondent.

PER CURIAM. — Victoria Roberts was injured in a two-car accident while riding in a car driven by Cathy Tangen. Tangen's insurer, Safeco Insurance Company, paid Roberts $2,032 in personal injury protection benefits (PIP). Roberts later accepted a $20,000 settlement offer from the tortfeasor's insurer, Progressive Casualty Insurance. That amount exhausted the tortfeasor's policy limits.

Taking the position that the settlement amount fully compensated Roberts for her injuries, Safeco refused to release its contractual right of subrogation in the recovery. Safeco however agreed to allow the settlement to go forward so long as Roberts' counsel held the $2,032 in trust pending determination of the value of the case. Roberts sued, alleging bad faith, breach of contract, and violation of the Washington Administrative Code and Consumer Protection Act. Safeco moved for summary judgment arguing that (1) the settlement fully compen-

sates Roberts for her damages and therefore Safeco is entitled under its insurance contract to reimbursement; and (2) if Roberts disagrees, her remedy under the contract is to request an arbitration to decide the damage issue. The trial court granted Safeco summary judgment, finding that the issue of damages must be arbitrated before Safeco is required to release its claim. The court also denied Roberts' cross-motion for summary judgment. Based on our reading of the policy and Washington law, we agree with the trial court and affirm.

## DECISION

Relying on *Hamilton v. Farmers Ins. Co.*,[1] Victoria Roberts argues that Safeco waived its right to assert a PIP subrogation claim because it failed to "buy out" Roberts' claim against the tortfeasor. *Hamilton* is distinguishable. First, it concerned underinsured motorist coverage (UIM), which, unlike PIP coverage, is heavily regulated by statute. Second, it was undisputed that the insureds' settlement did not fully compensate them for their loss.

The facts of *Hamilton* are as follows. Ronald Hamilton, Jr. died in a car accident. His family's attorneys assessed the value of their wrongful death claim at $1.2 to $1.5 million. The tortfeasor driver had neither insurance nor recoverable assets. His employer had $500,000 of liability insurance with Early American Insurance and about $13,600 in assets. The Hamiltons carried $100,000 in underinsured motorist coverage with Farmers Insurance. Because the Hamiltons' estimated damages exceeded the limits of all other applicable insurance, the Hamiltons tendered a demand on Farmers for UIM coverage.

After they were unable to settle with Early American, the Hamiltons sued the tortfeasor and his employer. Early American then offered to pay its policy limits in exchange for a complete release against its insureds. Farmers however refused to consent to the settlement, claiming

[1]107 Wn.2d 721, 733 P.2d 213 (1987).

that it would prejudice its right of subrogation against the employer's other assets. The Hamiltons nevertheless accepted the offer and fully released defendants. After Farmers refused to process the Hamiltons' UIM claim, the Hamiltons sued. Farmers contended the Hamiltons had prejudiced its subrogation rights to the additional assets of the employer by releasing the defendants and claimed that it should be entitled to offset its payment to the insureds by the amount of assets that had not been received by the insureds in the settlement.

Emphasizing that the statutory aim of the underinsured motorist statute is to fully compensate the insured, the Supreme Court held that that aim "cannot be defeated by offsetting underinsurance coverage by tortfeasor assets that have not been received by the insured." The court noted that the insurer "may secure subrogation rights against *additional assets* of the tortfeasor by avoiding the settlement with prompt payment of underinsurance benefits and a substituted payment to the insured", ensuring that the injured insured receives the full benefit of the proposed settlement and his underinsurance coverage.[2] Because the Hamiltons' claim was undisputedly worth more than their recovery, there was no issue of double recovery.[3]

■ ■ In contrast, Safeco argues here that Roberts' settlement amount fully compensates her for her injuries entitling Safeco to reimbursement so that Roberts will not recover twice for the same loss. Safeco's subrogation rights

---

[2]*Hamilton*, 107 Wn.2d at 735 (emphasis added).

[3]Roberts also cites to the recent case of *Bierce v. Grubbs*, 84 Wn. App. 640, 929 P.2d 1142 (1997), in support of her argument. *Bierce* is again readily distinguishable. There, the insureds contended that Safeco should be permitted to pursue its subrogation claim against the tortfeasor and was not entitled to any of the funds paid by the tortfeasors or their insurer pursuant to an offer of judgment. The court noted that, under *Leader Nat'l Ins. Co. v. Torres*, 113 Wn.2d 366, 373, 779 P.2d 722 (1989), Safeco could proceed against the insureds for reimbursement only after showing they had been fully compensated. But Safeco never sought reimbursement against its insureds nor was there even an evidentiary finding that the insureds were fully compensated by payment of the judgment. Therefore the court held that the trial court erred in requiring the insureds to reimburse Safeco out of the settlement funds.

arise in equity and by contract.[4] Roberts received benefits under the Safeco policy because, as an injured passenger, she came within the definition of an "insured" under the PIP provisions. As a third-party beneficiary, she is therefore bound by its terms and conditions.[5] One of the policy's conditions for payment of PIP benefits is that the recipient give Safeco the right of subrogation to the extent of benefits paid. The policy provides that if the insured recovers damages from another, "that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment." If the parties disagree as to the amount payable under the policy, the policy requires that "the dispute shall be resolved by arbitration."

■ In equity, the rule is that an insurer is entitled to reimbursement of benefits paid where the insured recovers payment for the same loss from a tortfeasor. "The equitable principle, based on unjust enrichment, is that an injured party is entitled to be made whole but should not be allowed to duplicate recovery."[6] Thus, under both the insurance contract and equity, Safeco holds a subrogation interest in any recovery Roberts might obtain from the tortfeasor. Whether Safeco is entitled to reimbursement depends however on whether the $20,000 settlement amount fully compensates Roberts for her damages. If it does, Safeco is entitled under both the contract and equity to reimbursement. If it does not, as Safeco itself acknowledges, there is no right to reimbursement.

■ The trial court correctly decided that the issue cannot be decided until the value of Roberts' claim is evaluated by an arbitrator. Roberts' remedy under the policy is

---

[4]*State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. 838, 840-41, 678 P.2d 339 (1984).

[5]*Mattson v. Stone*, 32 Wn. App. 630, 648 P.2d 929 (1982).

[6]*State Farm Mut. Auto. Ins. Co. v. Lou*, 36 Wn. App. at 841.

to proceed to arbitration. Summary judgment was properly granted in favor of Safeco.