In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1321

BANKRUPTCY ESTATE OF LAKE GENEVA SUGAR
SHACK, INCORPORATED, a Wisconsin corporation,
and BANKRUPTCY ESTATE OF DANA MONTANA,

Plaintiffs-Appellants,

v.

GENERAL STAR INDEMNITY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 91 C 163--Lynn Adelman, Judge.

Argued November 4, 1999--Decided January 11, 2000

Before MANION, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge. This is a diversity case based on the Wisconsin tort of bad faith in denying insurance coverage. The district court granted the motion of the General Star Indemnity Company (GenStar) for summary judgment and dismissed the case on the basis of claim preclusion. Bankruptcy Estate of Lake Geneva Sugar Shack, Inc. v. General Star Indemnity Co., 32 F. Supp. 2d 1059 (E.D. Wis. 1999). The issue before us is whether this action is barred by a judgment in a case brought by the insurer in Walworth County, Wisconsin, a case in which counterclaims were filed, including one for breach of the contract.

The Lake Geneva Sugar Shack, Inc. is a Wisconsin corporation that operated the Sugar Shack nightclub in Lake Geneva, Wisconsin. Dana Montana was the sole shareholder and principal officer of the corporation. The Sugar Shack purchased insurance from General Star in July 1989. In February 1990 a fire substantially damaged the building, and within 24 hours GenStar announced that it intended to deny coverage because it concluded that Montana was somehow involved in starting the fire. GenStar suspected that Montana had a financial motive to burn the building and it ordered a financial background

check, which confirmed that the building was mortgaged and that the mortgage was cross-collateralized with other properties, including Montana's home. As a result of GenStar's advising the mortgage company that Montana set the fire, Montana lost a refinancing of her properties which had been approved. The building was demolished and the mortgagee foreclosed on her other properties, which were worth $3.327 million.

But GenStar did not formally deny coverage until after 11 months of investigation. During that time, which Montana contends was dragged out in an attempt to deplete her financial resources, GenStar refused to reinstate coverage and refused to refund her premiums.

GenStar brought a declaratory judgment action against the Sugar Shack and Montana in the Walworth County circuit court, seeking to dissolve the insurance agreement. GenStar accused Montana of fraud, breach of the policy agreement, and other dastardly deeds. Sugar Shack and Montana then filed the present action in federal court, alleging claims of breach of contract and bad faith. The late Judge Robert W. Warren, to whom the case was assigned, stayed the federal action pending resolution of the state court case. In granting the stay request, Judge Warren said:

If the court stays the action, it will be able to rely on the state court's findings of fact instead of eliciting the facts contemporaneously alongside the state court in two separate proceedings. Any state court finding will reduce the amount of litigation in a parallel federal matter. If Montana prevails, she will not only be able to have her day in court, but she will be leveraged into a better bargaining position if she chooses to settle out of court. If General Star prevails, Montana's claim will be mooted without both parties having to go through another expensive, time-consuming procedure.

After the stay was entered, Montana (from here on, we will often refer to the plaintiffs simply as Montana) attempted to obtain a stipulation to consolidate all of her claims in the federal action with the Walworth County action. GenStar refused to consolidate the bad faith claim but agreed to consolidate the vicarious liability and breach of contract claims. The stipulation as to the latter claims was entered.

In January 1994 Judge Warren inquired into the status of the federal action. GenStar responded, in writing, as follows:

As all matters that were initially embraced in the federal court action have been embraced in the state court action, I see no reason why the federal court action can not simply be dismissed.

Montana did not agree, and she wrote this letter to Judge Warren:

In no event, should this matter be dismissed as the Walworth County action does not contain the same causes of action as this case. . . . A dismissal of this action would seriously prejudice the plaintiffs' rights because it would create statute of limitations problems for the causes of action pled in this case that were not contained in the Walworth County case. Specifically, the plaintiffs' Complaint contains a cause of action for bad faith which has never been alleged in the Walworth County case.

Judge Warren responded by closing the case administratively[1] but saying:

Nothing herein should be considered a dismissal or disposition of this matter, however, and either party may reopen the case at any time by advising the court and opposing counsel in writing that further proceedings are desired.

On January 11, 1994, Montana's attorney, Christopher Hale, appeared in Walworth County court and said he was considering bringing a motion to assert a bad faith claim in that court. GenStar contends that Hale expressly acknowledged at the January hearing the risk of his bad faith claim being barred by claim preclusion if he did not file it in Walworth County. But Montana contends that Hale was only concerned about the statute of limitations. Montana has the better of this dispute, both on the record and because of the principle that for purposes of summary judgment, disputes of fact are resolved in favor of the nonmovant. The transcript shows:

THE COURT: Well, first of all, Bad Faith wouldn't be an issue in this case, would it? It would come after a decision is rendered in the case it would seem to me. In other words, you've got a new lawsuit. Question arises whether his objection to the statute or not would survive-- that would--I can't see how that issue would come up here until it was a judgment in this case.

MR. HALE: I think the law is, your Honor, and Mr. Baxter will correct me, that when facts giving rise to evidence that there was not a reasonable basis at the time of the denial of coverage that at that point in time your cause of action for Bad Faith accrues and you have two years to bring it and I think the case law has

Bad Faith claims in trials like this where they are tried together with the arson case itself.

Hale was clearly discussing the statute of limitations, not claim preclusion.

   Sugar Shack and Montana filed for bankruptcy in September 1994, which automatically stayed the Walworth County case. GenStar moved to lift the stay. Montana wanted to consolidate the Walworth County coverage claim with the federal bad faith claim under 28 U.S.C. sec. 1452(a), providing for removal of claims related to bankruptcy cases. However, instead, the bankruptcy court lifted the stay; plaintiffs appealed again, arguing for one forum, the federal forum. On appeal to the district court, GenStar again opposed the request, saying:

As set forth in the Decision . . . Judge Warren realized the state law nature of those claims, and stayed further proceedings in the Federal Court Action until conclusion of the Walworth County Action. At that time, Appellants could proceed with the Federal Court Action and adjudicate their bad faith claim.

   . . . .

   . . . The Walworth County Action is the best forum for resolution of all claims other than the bad faith claim and the bad faith claim should be litigated in the Federal Court Action after completion of the Walworth County Action.

Judge John W. Reynolds, to whom the bankruptcy appeal was assigned, said:

If General wins in state court, obviously there is no bad faith claim. If General loses, issue preclusion will prevent General from relitigating most issues in the bad faith claim. The trustees would have a stronger case if claim preclusion and a final resolution of the state case would bar the federal action, thereby denying the trustees the right to ever raise the bad faith claim. Because the trustees have not raised this issue, the court assumes it is not a problem.

   After a 2-week trial in Walworth County, a jury found that GenStar breached the contract and awarded Montana and Sugar Shack $260,000 in insurance coverage damages and $3.327 million in consequential damages. The state trial judge, on motions after verdict, set aside both awards. The Wisconsin Court of Appeals affirmed in part and reversed in part, reinstating the $260,000 coverage award.

   Montana and Sugar Shack then sought to reopen

and restore this case to the court's active docket so they could pursue their bad faith claim. By letter dated March 9, 1998, Judge Lynn Adelman, to whom the case had now been assigned, raised the question of claim preclusion on his own motion and ordered briefing on the issue. Seizing the moment, GenStar moved for summary judgment, claiming that the case was in fact barred. Finding no controlling Wisconsin law on the issue before him, the judge conducted a general, Restatement-based, analysis of claim preclusion law as he predicted the Wisconsin courts would do in this situation. He then granted GenStar's motion for summary judgment and dismissed the case. Sugar Shack and Montana appeal.

We disagree with the conclusion that Wisconsin law offers too little guidance on this issue. Because existing snippets of Wisconsin law offer strong hints of how Wisconsin courts would view these facts, we cannot agree with the district court. Furthermore, even under a purely legal analysis of the issue as one of first impression in Wisconsin (such as the district judge conducted), the facts lead us to a conclusion contrary to the one reached in the district court.

It can hardly be disputed that everyone assumed all along that the bad faith claim could proceed in federal court after the trial was completed on the other issues pending in state court. There was no issue of judicial economy and no way to avoid two trials. Even had the bad faith claim been filed in Walworth County, the state court judge stated that he would have tried that claim separately from the rest of the case. That suited GenStar, which quite naturally wanted bad faith issues kept out of the first trial. More than likely, GenStar was not very concerned all along with the stayed federal case because it thought it would win in Walworth County and the bad faith case would go away. Although GenStar tried to get rid of the bad faith suit when it incorrectly told Judge Warren that there was nothing left of the federal case, it did not object when he declined to dismiss the case. Plus, on more than one occasion, GenStar specifically acknowledged that the federal case could proceed after the state case was over.

At least two Wisconsin cases strongly suggest that in this situation, Wisconsin courts would not be offended by the existence of an action based on the tort of bad faith and a separate action regarding coverage issues. That is what happened in Heyden v. Safeco Title Insurance Company, 175 Wis. 2d 508, 498 N.W.2d 905 (Wis. App. 1993), overruled on other grounds, Weiss v.

United Fire, 197 Wis. 2d 365, 541 N.W.2d 753 (1995). Prior to the 1993 decision in Heyden, the court of appeals had issued (in 1989) an unpublished order which concerned precisely the issue before us. Even though the unpublished order is not controlling precedent (see sec. 809.23(3) Wisconsin Statutes) there is no impediment to noting what the court of appeals said in the published decision about its holding in the unpublished order:

[O]ur November 20, 1989, order, which is the law of this case, made it clear that I.W.S.'s "bad faith" action against Safeco is not barred by the earlier breach-of-contract action.

At 520. Further, in a footnote, the court said:

On November 20, 1989, this court summarily reversed the judgment of dismissal, holding that the breach-of-contract claim and the bad-faith claim "each arose from a separate transaction" for res judicata purposes.

N.2, at 515. What we learn from Heyden, then, is that in at least one instance a bad faith claim was not barred by a prior breach of contract action. When we are predicting the course of Wisconsin law, clues like these indicate to us that Wisconsin courts might very well be willing to allow Montana's bad faith claim to proceed.

The second case is Davis v. American Family Mutual Insurance Company, 212 Wis. 2d 382, 569 N.W.2d 64 (Wis. App. 1997), in which the insured was injured in a one-vehicle accident in Hennepin County, Minnesota, in a vehicle driven by an underinsured motorist. Davis settled with the driver (for less than the inadequate policy limits) and then claimed underinsured motorist benefits from his insurance company, American Family. American Family denied the claim and Davis sued in Minnesota, which allows an insured to sue for underinsured motorist benefits after the acceptance of a settlement for less than the policy limits of the underinsured motorist. Davis won. He then filed a bad faith action against American Family in Wisconsin. American Family moved to transfer the case to Minnesota; the Wisconsin judge granted the motion and said that to the extent claim is unavailable in Minnesota, he presumably would allow the parties to proceed. The Hennepin County court dismissed the case because Minnesota does not recognize a tort of bad faith. Back in Wisconsin, American Family moved for summary judgment on res judicata principles. The court granted the motion and Davis appealed. The court of appeals rejected the argument. Davis, even though he seemed clearly to be forum shopping, was allowed to proceed with

his bad faith claim. In finding that the suit was not barred, the court relied heavily on what the trial judge said he would do:

Davis argues that claim preclusion is inapplicable to this case. We agree. As a matter of law, claim preclusion does not apply when the plaintiff accepts the trial court's invitation to file his claim elsewhere. Schneider v. Mistele, 39 Wis.2d 137, 158 N.W.2d 383 (1968). "[A] prior judgment is not res adjudicata or an estoppel bar as to any matter which the court in the earlier case expressly refused to submit to the jury and expressly directed should be litigated in another forum, or in another action." Id. at 141, 158 N.W.2d at 385 (footnote omitted). Here, the trial court granted a stay so that Davis' bad faith claim could be tried in Minnesota, and ordered that "[t]o the extent that the claim and prosecution are unavailable in Minnesota, this court would retain jurisdiction and allow the parties to pursue action in this Court for ultimate determination." We conclude that the trial court's order granting the stay but permitting Davis to return with his bad faith claim to Wisconsin prevents the application of claim preclusion to bar Davis' bad faith claim.

The situation bears a strong similarity to what happened in the present case.

We think Wisconsin courts would look to the procedural history of Montana's case, to what the judges and the parties said and assumed, and determine that, at least under these peculiar facts, the bad faith case is not barred.

Our conclusion is consistent with the long-standing view of the Wisconsin courts that a breach of contract claim and a bad faith claim are separate claims. See Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 271 N.W.2d 368 (1978). In fact, in Warmka v. Hartland Cicero Mutual Insurance Company, 136 Wis. 2d 31, 400 N.W.2d 923 (1987), the court said that the bad faith claim is not based on the policy (as is the breach of contract claim, of course) but grows out of a breach of a duty to properly investigate a claim. While these cases are not dispositive on the claim preclusion issue, taken together with Heyden and Davis they further bolster our belief that Wisconsin courts--at least in the odd circumstances of this case--would allow the bad faith claim to proceed.

We hesitate to say more because the procedural facts before us make this a poor case in which to proclaim general principles of law. Particularly, it is not a good case for the federal courts to make unnecessary predictions about the future of

Wisconsin law. That said, we will comment only briefly on the effect of the Restatement (Second) on Judgments (1982).

In the absence of what it perceived to be a clear statement of Wisconsin law, the district court turned to the Restatement (Second) of Judgments (1982) to analyze whether the bad faith claim should be allowed to proceed. Determining that Wisconsin follows a transaction approach, the district court proceeded to look to the Wisconsin rule on counterclaims. Although it recognized that the Wisconsin rule generally provides for permissive counterclaims,/2 the court concluded that the permissive counterclaim rule did not answer the question whether a defendant may split its counterclaims, as Montana did here by bringing some in Walworth County and maintaining the bad faith claim in federal court. It is at this point that the analysis was guided by the Restatement, which says in the comment to sec. 21 that a defendant who interposes a counterclaim is in effect a plaintiff to whom the rules of merger apply--which means that a party who obtains a judgment cannot bring a separate action on any part of the original claim because the original claim is merged into the judgment. sec. 18(1). The district court then concluded that a defendant who obtains a judgment on a counterclaim is foreclosed from recovering on other counterclaims arising out of the same transaction.

At best, we think the district court's analysis stops one step short of the finish line. The Restatement also sets out exceptions to the general rule against splitting counterclaims in sec. 26. The Comment to that section notes that splitting is not prohibited when the opposing party consents to or acquiesces in the splitting. We will quote at length:

(a) Consent to or acquiescence in splitting (Subsection (1)(a)). A main purpose of the general rule stated in sec. 24 is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim.

The parties to a pending action may agree that some part of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it. The agreement will normally be given effect. Or there may be an effective agreement, before an action is commenced, to litigate a part of a claim in that action but to reserve the rest of

the claim for another action. So also the parties may enter into an agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment, for example, a clause included routinely in separation agreements between husband and wife providing that the terms of the separation agreement shall not be invalidated or otherwise affected by a judgment of divorce and that those terms shall survive such a judgment.

Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

The record shows that GenStar clearly acquiesced in--and in fact encouraged--the splitting of Montana's claim. Even under an analysis based on the Restatement, Montana must be allowed to proceed with her bad faith claim.

The judgment of the district court is

REVERSED and REMANDED.

/1 A device which permits a district court to remove a case like this from its active docket and thus relieve the court from reporting on its status at periodic intervals.

/2 For an exception, see A.B.C.G. Enterprises, Inc. v. First Bank Southeast, 184 Wis. 2d 465, 515 N.W.2d 904 (1994).