FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 SEP 24  AM 8: 35

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LYDIA LUTAAYA, | ) | No. 77178-7-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| BOEING EMPLOYEES CREDIT UNION, | ) ) ) ) | |
| Respondent. | ) ) ) | FILED: September 24, 2018 |

CHUN, J. — Lydia Lutaaya had a bank account, mortgage, and car loan through Boeing Employees Credit Union (BECU). She defaulted on both loans, resulting in foreclosure on her condominium and repossession of her car. She brought a lawsuit alleging multiple claims against BECU including defamation and intentional infliction of emotional distress. The trial court dismissed most of the claims on CR 12(b)(6) and summary judgment motions. After a bench trial, the court found for BECU on the defamation and emotional distress claims. Lutaaya appeals the trial court's rulings in favor of BECU. Finding no error, we affirm.

## FACTS

Lutaaya belonged to BECU as a member. In 2006, she obtained a mortgage from BECU to buy a condominium, secured by a deed of trust. She

secured a car loan from BECU in 2010. In late 2014, Lutaaya's payments on the loans became inconsistent. She subsequently ceased paying on both loans.

Lutaaya began making angry accusations about the conduct of BECU and the Renton Police Department (RPD). She sent letters to BECU, alleging RPD stole her identity, hacked her home Internet and accounts, and published a "wanted" notice with her photograph on a government website. She claimed BECU and RPD solicited money for attendees to a conference using her face and identity.[1] She also accused BECU of acting in concert with the RPD to force foreclosure of her home. She made irate phone calls to BECU's phone banking center, and visited multiple BECU branches, requesting information about her accounts and making similar allegations.

Due to Lutaaya's increasingly hostile behavior and resulting concern for the safety of the staff and credit union members, BECU banned her from all branches. The ban restricted Lutaaya to banking by mail, telephone, and Internet.

BECU filed a complaint for replevin in King County Superior Court to repossess the car and obtain a deficiency judgment. Lutaaya contested the claim. The court entered judgment in favor of BECU on April 24, 2015. Lutaaya did not appeal this judgment; BECU repossessed the car. BECU also executed a nonjudicial foreclosure and trustee's sale of Lutaaya's condominium. Lutaaya did not seek judicial intervention during foreclosure and the trustee's sale

---

[1] Lutaaya alleges BECU and RPD collaborated to steal her identity by claiming she was the "Face of Boeing." She claims that RPD and BECU organized a conference at the superior court and solicited money from companies in order to meet her.

occurred in September 2015. After the sale, Lutaaya refused to vacate the property, forcing BECU to bring suit for unlawful detainer. In response to the motion for unlawful detainer, Lutaaya continued to allege BECU and RPD engaged in fraudulent behavior to force her to default on her loans.

Lutaaya, representing herself, filed suit against BECU in September 2015. She made wide-ranging allegations, including violation of her "banking rights," interference with her right to sue, wrongful foreclosure on her condominium and repossession of her car, misrepresentation, defamation, and emotional distress. The trial court dismissed most of these claims on the pleadings. BECU then filed a motion for summary judgment on the remaining claims, which related to banking rights, defamation, and infliction of emotional distress. The trial court granted summary judgment for BECU except as to the defamation claim.

Lutaaya's defamation claim proceeded to a bench trial. At that time, the trial court also considered the claim for intentional infliction of emotional distress, determining the claim arose from the defamation issue. Lutaaya appeared as her only witness. She claimed several BECU employees had called her a prostitute, and said she was crazy or mentally ill during various visits to multiple BECU branch offices. She argued other BECU patrons overheard these comments, which caused her considerable emotional distress.

BECU called two employees to testify about the alleged statements. Lutaaya had specifically named one of the witnesses, William Morris, as a perpetrator of the defamation. During her testimony, Lutaaya gave an accurate description of Morris and his desk area at one of the BECU branches. But in his

testimony, Morris stated he did not recognize Lutaaya and had never helped her at a BECU branch. He also testified he had not made statements that Lutaaya was a prostitute or that she was crazy, nor had heard other BECU employees make such statements. Morris further testified he would never make the alleged comments as they are "completely unprofessional." He indicated those types of statements did not adhere to the standards of professionalism of BECU branches.

The other employee, Adam Johnson, also testified such statements would deviate from BECU's culture of professionalism and respect. Despite having alleged a BECU employee named Adam made defamatory remarks, Lutaaya admitted she did not recognize Johnson. Johnson testified he was the only Adam working in the lobby of the branch at issue in her allegations but had never seen Lutaaya or helped her at the bank branch.

The trial court found the BECU witnesses' testimony credible and Lutaaya's testimony not credible. The trial court ruled in favor of BECU, determining Lutaaya had failed to meet her burden on the elements of the defamation or intentional infliction of emotional distress claims. Lutaaya filed a motion to reconsider, which the court denied.

Lutaaya appeals.

## ANALYSIS

Representing herself on appeal, Lutaaya challenges the trial court's dismissal of her claims and judgment in favor of the defendant. As a preliminary matter, we note our expectation that self-represented litigants comply with the

procedural rules on appeal. State Farm Mut. Auto Ins. Co. v. Avery, 114 Wn. App. 299, 310, 57 P.3d 300 (2002). Failure to do so may preclude appellate review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999).

Lutaaya's briefing falls below the standards set forth in RAP 10.3.[2] Despite the deficiencies, we may elect to address an issue inadequately briefed. State Farm Mut. Auto Ins. Co., 114 Wn. App. at 310. Therefore, to the extent possible, we have considered the merits of Lutaaya's claims.[3]

## Claims Dismissed on the Pleadings

The trial court dismissed many of Lutaaya's claims with prejudice in response to BECU's motion to dismiss under CR 12(b)(6). A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." CR 12(b)(6). In evaluating such a motion, the court's inquiry focuses on whether the plaintiff's claim suffices legally. Gorman v. Garlock, Inc., 155 Wn.2d 198, 215, 118 P.3d 311 (2005). "A CR 12(b)(6) motion may be granted only where there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could

---

[2] For example, assignments of error should be concise statements of each error made by the trial court with issues pertaining to the assignments of error. RAP 10.3(a)(4). Here, Lutaaya generally assigns error to the trial court's ruling in favor of BECU and makes a series of allegations about BECU's conduct. Similarly, Lutaaya's statement of the case continues the allegations against BECU instead of providing a fair statement of the facts and procedures relevant to the issues on review. See RAP 10.3(a)(5). Lutaaya fails to make meaningful legal arguments or cite to relevant authority as required by RAP 10.3(a)(6). Her opening brief raises facts and issues unrelated to the trial court's decisions and does not address the trial court's verdict in the defamation lawsuit. Generally, passing treatment of an issue or lack of reasoned argument does not suffice to warrant judicial review. Joy v. Dep't of Labor & Indus., 170 Wn. App. 614, 629, 285 P.3d 187 (2012).

[3] We note Lutaaya has raised issues and facts for the first time on appeal, including allegations BECU and RPD conspired to kill her. While we consider the merits of many of Lutaaya's claims, we decline to review arguments and facts raised for the first time on appeal. See Carrera v. Olmstead, 189 Wn.2d 297, 302 n.3, 401 P.3d 304 (2017).

conceivably be raised by the complaint to support a legally sufficient claim." Worthington v. Westnet, 182 Wn.2d 500, 505, 341 P.3d 995 (2015). "The purpose of CR 12(b)(6) is to weed out complaints where, even if that which the plaintiff alleges is true, the law does not provide a remedy." Alexander v. Sanford, 181 Wn. App. 135, 142, 325 P.3d 341 (2014).

A CR 12(b)(6) motion presents a legal question with facts considered only as a background for the legal determination. Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977). A trial court's ruling on a motion to dismiss for failure to state a claim presents a question of law reviewed de novo. Worthington, 182 Wn.2d at 506. The court presumes the truth of the plaintiff's allegations. Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 837 (2007).

### 1. Vehicle Repossession

Lutaaya's complaint alleged BECU "falsely" repossessed her vehicle. The parties previously litigated this issue with final judgment entered for BECU. Because of this prior litigation, res judicata bars Lutaaya's claims concerning repossession.

"Res judicata refers to 'the preclusive effect of judgments, including the relitigation of claims and issues that were litigated, or might have been litigated, in a prior action.'" Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995) (quoting Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L. REV. 805, 805 (1985)). Res judicata applies when the prior judgment has concurrence of identity with a subsequent

6

action in "(1) subject matter, (2) cause of action, and (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made." Loveridge, 125 Wn.2d at 763. The quality of the persons for or against whom the claim is made "simply requires a determination of which parties in the second suit are bound by the judgment in the first suit." Ensley v. Pitcher, 152 Wn. App. 891, 905, 222 P.3d 99 (2009).[4]

Both Lutaaya's complaint and BECU's replevin lawsuit pertain to disputed possession of the car, have the same cause of action, and involve identical parties who are bound by the original judgment in the suit for replevin. The car repossession claim satisfies all of the requirements for preclusive effect under res judicata. As a result, the trial court properly dismissed any claim relating to the repossession of Lutaaya's car.

### 2. Nonjudicial Foreclosure

Lutaaya claims BECU wrongfully engaged in nonjudicial foreclosure and sale of her condominium. Her condominium was secured by a deed of trust. The deed of trust act (DTA) provides a procedure for restraining a trustee sale. RCW 61.24.130. Failure to bring a lawsuit as outlined under this procedure "may result in a waiver of any proper grounds for invalidating the Trustee's sale."

---

[4] Parties bound by the first judgment include all parties to the litigation plus all parties in privity with them. Ensley, 152 Wn. App. at 905. "The quality of persons or parties is relevant in situations where the parties to two lawsuits are the same but one or the other acts in a different capacity in the two proceedings." Berschauer v. Phillips Constr. Co. v. Mut. of Enumclaw Ins. Co., 175 Wn. App. 222, 231, 308 P.3d 681 (2013). For example, an insurance company had different qualities when it defended against a claim for damages in arbitration as an adversary and then defended in litigation in the quasi-fiduciary role as insurer. Forston-Kemmerer v. Allstate Ins. Co., 198 Wn. App. 387, 406, 393 P.3d 849 (2017). Lutaaya and BECU serve in the same capacity in both lawsuits here.

RCW 61.24.040(1)(f)(IX). Waiver occurs if the party "(1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." Albice v. Premier Mort. Servs. of Wash., Inc., 174 Wn.2d 560, 569, 276 P.3d 1277 (2012).

BECU provided evidence that the successor trustee complied with all notice requirements in chapter 61.24 RCW, presumably including the right to enjoin the sale under RCW 61.24.130. While Lutaaya made multiple allegations of wrongdoing with respect to her mortgage prior to the trustee's sale in September 2015, she made no attempt to enjoin the sale. As a result, she waived her claims under the DTA.

One of Lutaaya's allegations included BECU's participation in mortgage fraud with RPD, "by adding RPD on [her] mortgage." Under the DTA, failure to enjoin a trustee's sale does not waive a common law fraud claim. RCW 61.24.127. But a plaintiff must plead a fraud claim with particularity. McAfee v. Select Portfolio Servicing, Inc., 193 Wn. App. 220, 232, 370 P.3d 25 (2016); see CR 9(b). Lutaaya made only vague allegations of fraud and, therefore, failed to meet this burden. The trial court properly dismissed the claims pertaining to foreclosure and sale of Lutaaya's condominium.

3. Complaints against RPD

Lutaaya raised several claims pertaining to actions allegedly attributable to RPD. These allegations implicate RPD rather than BECU. As a result, these claims against BECU were misplaced and properly dismissed on the pleadings.

### 4. Interference with Right to Sue

Lutaaya alleged all the clerks in the superior court were instructed not to file the required documents and to confuse her when she went to the clerk's desk to file documents. This claim refers solely to the actions of the superior court, none of which are attributed to BECU. Because these allegations do not establish a claim against BECU, the trial court properly dismissed it on the pleadings.

### 5. Misrepresentation

Lutaaya claims BECU "lied to the companies that paid into the conference that 'I am the face of Boeing' in an effort to make a lot of money." She further alleges BECU used an image of her face to solicit money without her consent. Lutaaya provides no further information as to the subject of the conference, the companies involved, or BECU's actions with respect to the alleged misrepresentation. Without these critical facts, the vague allegations failed to provide BECU with fair notice of the claim against it. See CR 8(a); Estate of Dormaier ex rel. Dormaier v. Columbia Basin Anesthesia, PLLC, 177 Wn. App. 828, 853-54, 313 P.3d 431 (2014). Therefore the trial court did not err by dismissing this claim on the pleadings.

Violation of Banking Rights

Lutaaya claims BECU denied her access to her bank accounts and violated her "banking rights." BECU moved for summary judgment. The trial court granted the motion as to the banking rights claim, finding Lutaaya had not provided a legally actionable claim or evidence, other than her statements, as needed to survive the motion. We agree with the trial court's conclusion.

A trial court properly enters summary judgment when there exists no genuine issues of material fact and the moving party deserves judgment as a matter of law. CR 56(c); Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 408, 282 P.3d 1069 (2012). The court must consider facts and all reasonable inferences in the light most favorable to the nonmoving party. Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports, 146 Wn.2d 207, 223, 45 P.3d 186 (2002). "Summary judgment should be granted only if a reasonable person would reach but one conclusion." Int'l Ass'n of Firefighters, 146 Wn.2d at 223.

The appellate court reviews an order of summary judgment de novo. Enterprise Leasing, Inc. v. City of Tacoma, 139 Wn.2d 546, 551, 988 P.2d 961 (1999).

Lutaaya argues BECU denied her access to her bank accounts. The record does not support this claim. BECU banned Lutaaya from all branch locations due to safety concerns, but she maintained access to banking through the telephone, mail, and the Internet. She had an online banking account and BECU submitted evidence she had access to her banking records online, as

verified by BECU's in-house counsel. In addition, BECU provided Lutaaya with paper copies of her banking records for the time period covered by the complaint.

Lutaaya claimed BECU failed to present her accounts for review during the court hearing and submitted false documents related to her mortgage and car loan. As noted above, BECU provided evidence that she could access her accounts online and that it had given her paper copies of her banking records. She provided no evidence of the documents' fraudulence and her allegations alone cannot defeat summary judgment. See Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002) ("In opposing summary judgment, a party may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist.").

Because all evidence points to the availability of online banking, no genuine issues of material fact remain, entitling BECU to summary judgment.

## Defamation

At trial, the court found for BECU on the defamation claim after determining Lutaaya had failed to establish any of the elements of defamation. We find no error.

A plaintiff bringing a defamation action must prove four elements: falsity, an unprivileged communication, fault, and damages. Mark v. Seattle Times, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981). "Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a statement of fact, not an opinion." Robel v. Roundup Corp.,

148 Wn.2d 35, 55, 59 P.3d 611 (2002). The First Amendment protects expressions of opinion, precluding actions thereon. Robel, 148 Wn.2d at 55 (citing Camer v. Seattle Post-Intelligencer, 45 Wn. App. 29, 39, 723 P.2d 1195 (1986)).

Where the trial court has weighed the evidence, the reviewing court plays a limited role and determines whether substantial evidence supports the findings of fact, and whether those findings in turn support the trial court's conclusions of law. Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't, 160 Wn.2d 32, 56, 156 P.3d 185 (2007). "Substantial evidence to support a finding of fact exists where there is sufficient evidence in the record 'to persuade a rational, fair-minded person of the truth of the finding.'" Hegwine v. Longview Fibre Co., 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004)). We will not substitute our judgment for that of the trial court, reweigh the evidence, or adjudge witness credibility. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

Here, Lutaaya alleged BECU employees said she was a prostitute and called her crazy or mentally ill. The trial court found Lutaaya's testimony not credible on these allegations. The trial court found the testimony of the BECU employees credible. We do not review such credibility determinations on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Because Lutaaya called only herself as a witness and the trial court found her lacking in credibility, she failed to prove BECU employees had made the disparaging remarks. Without demonstrating the existence of any allegedly

defamatory statements, Lutaaya cannot establish the required elements for a defamation claim. Given this inability to meet the burden of proof for her defamation claim, the trial court did not err in its verdict for BECU.

<u>Intentional Infliction of Emotional Distress</u>

Lutaaya appeals the trial court's determination that she did not satisfy the elements of intentional infliction of emotional distress. We agree with the trial court's conclusion.

A claim for intentional infliction of emotional distress requires proof of three elements: "'(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" <u>Trujillo v. Nw. Trustee Servs. Inc.</u>, 183 Wn.2d 820, 840, 355 P.3d 1100 (2015) (quoting <u>Kloepfel v. Bokor</u>, 149 Wn.2d 192, 195, 66 P.3d 630 (2003)). A plaintiff must demonstrate outrageous conduct so extreme as to go beyond all possible bounds of decency. <u>Kloepfel</u>, 149 Wn.2d at 196. Mere insults, indignities, and annoyances do not rise to the level of outrageousness required for intentional infliction of emotional distress. <u>Kloepfel</u>, 149 Wn.2d at 196.

The law limits review, once again, to determining whether substantial evidence supports the findings of fact, and whether those findings in turn support the trial court's conclusions of law. <u>Ford Motor Co.</u>, 160 Wn.2d at 56.

As discussed above, Lutaaya failed to prove BECU employees made derogatory statements about her. As a result, she has not established the existence of any extreme and outrageous conduct as required for intentional

infliction of emotional distress. She has not met her burden of proof on this element. The trial court properly entered verdict for BECU.

Affirmed.

Chun, J.

WE CONCUR:

Dwyer, J.

Schindler, J.