# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JANE LABEAUME, a married woman, | No. 60380-2-II |
| Respondent, | |
| v. | |
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a foreign insurance company, | PUBLISHED OPINION |
| Petitioner. | |

GLASGOW, J.—Jane Labeaume was in a car accident and sued the other driver. The case went to mandatory arbitration, and Labeaume signed a waiver for the purposes of that arbitration limiting her damages to $100,000, which was also the limit of the other, at fault driver's insurance policy. The arbitrator awarded Labeaume damages less than the $100,000 limit. The parties then settled for the amount of the arbitration award. The trial court entered a stipulation dismissing the case but did not enter a judgment.

Labeaume then requested underinsured motorist insurance (UIM) benefits from her insurer, the First National Insurance Company of America, for damages exceeding the $100,000 limit of the at fault driver's insurance policy. Based solely on the documentation Labeaume provided about her injuries, First National concluded that the settlement with the at fault driver had sufficiently compensated Labeaume for her damages. Labeaume sued First National for breach

of contract, and that case went to arbitration. The arbitrator awarded Labeaume $94,822.80 in UIM benefits, which First National promptly paid.

Labeaume then amended her complaint against First National to add extracontractual claims, including violations of the Insurance Fair Conduct Act (IFCA), ch. 48.30.010-.015 RCW. First National moved for summary judgment dismissal, arguing that (1) Labeaume was not entitled to UIM coverage because she had waived recovery above $100,000, and (2) that Labeaume could not bring IFCA claims against First National after it had paid her the full amount of her UIM arbitration award. The trial court denied summary judgment, stating that no Washington State legal authority supported First National's arguments. First National moved for discretionary review of the denial, and the trial court certified the two issues recited above to this court. We granted discretionary review.

We interpret Labeaume's waiver to be specifically for the purposes of the arbitration against the at fault driver, and it is unclear whether the arbitration award against the at fault driver became final before or after the settlement became binding. As a result, there is at least a genuine issue of material fact as to whether either the waiver or arbitration award limited Labeaume's potential legal recovery from the crash to $100,000. Accordingly, the trial court did not err by denying summary judgment regarding Labeaume's eligibility for UIM benefits covering damages greater than $100,000.

Further, the viability of Labeaume's IFCA claim presents a debatable issue that is the subject of conflicting analyses from federal district courts in Washington. Thus, the issue would benefit significantly from Washington Supreme Court review. However, given IFCA's intended purpose of protecting insureds, we hold that payment of insurance benefits, particularly when it

occurs *after* a final determination of damages, does not prevent an IFCA claim for extracontractual damages *resulting from* an allegedly unreasonable initial denial of benefits. We therefore affirm the trial court's denial of First National's summary judgment motion.

FACTS

I. BACKGROUND

In November 2018, Labeaume was in a car crash with another vehicle. It is undisputed that the driver of the other vehicle was 100 percent at fault for the crash. The at fault driver's insurance policy limit was $100,000.

In Washington, insurers are required to provide UIM benefits to cover their insureds where another driver's insurance coverage does not fully compensate the insured person for their damages. RCW 48.22.030(2). Under RCW 48.22.030(1), an "underinsured motor vehicle" is a motor vehicle that is either uninsured or, with respect to the limits of the at fault driver's available insurance, the amount available is less than the applicable damages that the covered person is "legally entitled to recover." Labeaume's insurance policy with First National contained a clause providing this coverage, defining an "[u]nderinsured motor vehicle" as a vehicle "[t]o which a bodily injury liability bond or policy applies at the time of the accident but the amount payable under all of the bonds or policies to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages." Clerk's Papers (CP) at 216 (boldface omitted).

Labeaume's insurance policy with First National provided for $250,000 in UIM coverage. Under her policy, Labeaume was required to "promptly notify" First National of "a tentative settlement between the insured and the insurer of the underinsured motor vehicle and allow [First National] a reasonable time to advance payment to the insured in an amount equal to the tentative

settlement to preserve [its] rights against the insurer, owner or operator of such underinsured motor vehicle." CP at 219 (boldface omitted).

In November 2018, soon after the crash, Labeaume's attorney wrote a letter to First National, stating, among other things, "This letter is . . . written to advise you that our client will be making an uninsured motorist/under-insured motorist claim with your company." CP at 138. Seven days later, a claims representative with First National sent a letter to Labeaume's attorney, stating, "Thank you for speaking with me today. This is to confirm that I have closed the uninsured motorist portion of the claim. If you find that the at-fault carrier does not have enough limits, please contact me and I will review at that time." CP at 141.[1]

## II. LABEAUME'S SUIT AGAINST THE AT FAULT DRIVER

In November 2019, a year after the crash, Labeaume brought a personal injury suit against the at fault driver. In January 2020, Labeaume began mandatory arbitration in that case.

In counties with more than 100,000 people and where two-thirds of the superior court judges have voted to make $100,000 the limit, civil claims under $100,000 *must* go to arbitration under chapter 7.06 RCW. *See* RCW 7.06.010, .020(1). But if a claim is worth more than $100,000, then mandatory arbitration does not apply. So the superior courts require confirmation that the claim is for money damages of $100,000 or less and nothing else.

In a statement of arbitrability, Labeaume had the option to 1) agree that her only claim was for monetary damages of $100,000 or less, 2) contest arbitrability by saying that the monetary

---

[1] In her briefing, Labeaume contends that her email indicated she was making a UIM insurance claim, and First National closed this claim without justification. However, per the language of the email, Labeaume's attorney only said that she "*will be* making" a UIM claim. CP at 138 (emphasis added). Thus, without further action by Labeaume to actually make a claim, which is not apparent in the record on appeal, it was not unreasonable for First National to await further development.

damages exceeded $100,000 or that she had a claim for relief other than money judgment, or 3) maintain that the damages amounted to more than $100,000 but waive any claim in excess of $100,000 for purposes of arbitration. Labeaume chose the third option, and Labeaume's attorney signed the statement of arbitrability noting that Labeaume "contends that the claim exceeds $100,000 but hereby waives any claim in excess of $100,000 *for the purposes of arbitration*." CP at 149 (emphasis added).

On January 21, 2021, Labeaume received an arbitration award against the at fault driver for $85,929.35. Labeaume was not required under her policy with First National to inform her insurance company about the arbitration award.

Labeaume states that on January 29, 2021, Labeaume and the at fault driver reached a settlement for the full amount of the arbitration award in lieu of a request for trial de novo in the superior court.[2] On February 2, 2021, Labeaume notified First National that she had reached a settlement with the at fault driver's insurance company for $85,929.35. Labeaume stated that her injuries exceeded the amount of the at fault driver's insurance policy limits, so she was making a UIM claim. In this letter, Labeaume also said that, per its subrogation right, First National could purchase Labeaume's cause of action against the at fault driver for the amount of the settlement. Under Washington case law, an injured motorist may make a UIM claim even if a settlement was less than the limits of the underinsured driver's policy. *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721, 727, 733 P.2d 213 (1987).

---

[2] The appellate briefs suggest that the timing of this settlement may be an issue of disputed fact, but we recite the facts in the light most favorable to Labeaume as the nonmoving party below.

The deadline for seeking a trial de novo of the arbitration award expired on February 16, 2021. On February 18, First National declined to buy out the settlement and stated that it would evaluate Labeaume's claim. Also on February 18, Labeaume signed a document releasing the at fault driver from all claims related to the accident in return for paying the full amount of the settlement. On March 9, the superior court dismissed Labeaume's suit against the at fault driver with prejudice, noting that the matter had been "fully settled and compromised." CP at 163. As a result, there was no judgment or satisfaction of judgment related to Labeaume's litigation against the at fault driver.

### III. LABEAUME'S SUIT AGAINST FIRST NATIONAL

Several months later, in January 2022, Labeaume's attorney wrote another letter to First National noting that it had not paid any UIM insurance benefits to Labeaume. Based on the evidence in our record, it appears that Labeaume's attorney and First National then had a several month exchange about Labeaume's reasonable medical costs and the amount of her UIM benefits.

First National stated that based solely on its assessment of Labeaume's submitted medical records, she was entitled to $77,214.46 in damages. First National excluded from damages a year and a half period after July 2019 where it determined that Labeaume had recovered from soft tissue injuries—her physical therapist had discharged her as "'pain free'"—and she had not yet reported postconcussive and anxiety symptoms. CP at 173. First National further determined that the evidence did not support Labeaume's lost wages claims past July 2019 when it appeared, based on her medical records, that her injuries resolved. First National concluded that because the gross value of Labeaume's damages totaled $77,214.46, the higher settlement with the at fault driver had fully compensated Labeaume for her injuries. First National stated it was "willing to review

6

any additional documentation" that Labeaume could provide in order to further evaluate her claim. CP at 174.

On April 27, 2022, Labeaume's attorney sent a letter pointing out evidence that, just days after the crash, Labeaume's medical provider noted Labeaume may have had postconcussive syndrome. Labeaume's attorney stated that Labeaume would accept $250,000, which was her policy limit, to resolve her UIM benefits claim. Without further investigation, First National reiterated that it believed Labeaume had been fully compensated by the settlement with the at fault driver and that it would be happy to review any additional documentation regarding Labeaume's damages.

On June 30, 2022, Labeaume sued First National, stating that it had breached its contract by failing to pay her any UIM benefits. The case was submitted to arbitration. On June 7, 2023, Labeaume received an arbitration award against First National. The arbitrator determined that the amount of Labeaume's total damages resulting from the crash was $205,590, including past general damages, future general damages, and past wage loss damages, but no future wage loss damages. The arbitrator awarded Labeaume $94,822.80 in UIM damages from First National, which was the total amount of damages from the crash offset by personal injury protection coverage First National had already paid Labeaume and the $100,000 policy limit of the at fault driver's insurance.

It is undisputed that on June 21, 2023, First National paid Labeaume $94,822.80, the full amount of the arbitration award.

In July 2023, Labeaume filed a required notice with the Office of the Insurance Commissioner that she would be bringing a claim against First National under IFCA. Labeaume

7

stated that First National unreasonably denied her coverage because, over a significant period of time, it unreasonably evaluated her UIM claim and failed to conduct a thorough enough investigation into her medical history, records, and costs.

After the 20-day notice period ended, Labeaume amended her existing complaint against First National, adding extracontractual claims for consumer protection violations, breach of the duty of good faith and fair dealing, and violations of IFCA. Labeaume contended that First National "unreasonably denied payment of UIM benefits to [Labeaume] under her policy." CP at 207. In the conclusion of the amended complaint, Labeaume sought "direct and consequential damages flowing from [First National's] . . . violation of IFCA," including both economic and noneconomic damages. CP at 211. She also sought attorney fees and costs under IFCA.

First National moved for summary judgment against Labeaume. Relevant here, First National argued that because of the arbitration award against the at fault driver and the waiver, Labeaume was not "underinsured" when she made her UIM claim. CP at 92. First National contended that because of the waiver, Labeaume was not "legally entitled" to recover any more than the $100,000 of the at fault driver's insurance policy. CP at 87-88. In fact, because Labeaume did not request a trial de novo challenging the mandatory arbitration award against the at fault driver, Labeaume was likely not "legally entitled" to any more than the $85,929.35 award she received after arbitration against the at fault driver.

Additionally, First National argued that Labeaume's claims under IFCA should fail because First National had paid her the full amount of the $94,822.80 arbitration award within the required notice period, curing any IFCA violation and precluding IFCA recovery.

8

Labeaume responded that under Washington law, an insured person can make a valid UIM claim after settling with the at fault third party for less than the third party's policy limits. Labeaume contended that the arbitration document limiting her recovery in arbitration to $100,000 did not address and was not inconsistent with UIM recovery under her policy, particularly where she and the at fault driver chose to settle the case rather than appeal the arbitration award for a trial de novo. Finally, Labeaume argued that an insured person can bring a claim under IFCA even after their insurer has paid the insured person's claim.

The trial court denied First National's motion for summary judgment. It explained that it was unable to find authority to support that the prior arbitration estopped Labeaume's current claim: "[T]he weight of the authority in Washington supports the conclusion that an arbitration award not reduced to judgment has no preclusive effect on a subsequent claim against a UIM policy." CP at 24. The trial court also rejected the argument that Labeaume's agreement to limit her claim against the at fault driver to $100,000 created a bar to UIM recovery under her own policy. Additionally, the trial court rejected First National's theory that it had cured any IFCA violation such that Labeaume could not bring IFCA claims after First National paid her the full amount of the arbitration award.

First National filed a motion with this court asking for discretionary review of the trial court's denial of its summary judgment motion. At the trial court, First National moved to stay the case pending this court's decision about whether to grant discretionary review. Granting First National's motion, the trial court certified two questions of law to this court under RAP 2.3(b)(4):

> (1) whether [Labeaume's] waiver of her third party claim in excess of $100,000 for the purposes of arbitration, precluded her from later filing a lawsuit seeking [u]nderinsured motorist coverage and later asserting extra-contractual claims arising out of the handling of the [u]nderinsured motorist claim, given the definition

9

provided in RCW 48.22.030(1) for "Underinsured motor vehicle" as a vehicle "to which the sum of the limits of all applicable policies is less than the damages which the covered person is legally entitled to recover [as] a matter of law[]"; and

(2) whether [First National's] payment of the UIM award prior to [Labeaume] filing an IFCA claim and prior to [Labeaume] amending [her] complaint to add an IFCA claim, operates to nullify or preclude any such claim.

CP at 6-7. We granted discretionary review.

## ANALYSIS

### I. Summary Judgment Standard

We review a trial court's denial of a summary judgment motion de novo. *Robb v. City of Seattle*, 176 Wn.2d 427, 432-33, 295 P.3d 212 (2013). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We consider the facts in the light most favorable to the nonmoving party. *Id.*

### II. Waiver

First National argues that when Labeaume made her claim, she was not legally entitled to UIM coverage. First National contends that because Labeaume waived any claim against the at fault driver above his $100,000 policy limit for the purposes of arbitration, she was not "'legally entitled to recover'" any amount greater than $100,000 and, therefore, she was not eligible for UIM benefits at all. Br. of Appellant at 2 (quoting RCW 48.22.030(1). First National further states that Labeaume's mandatory arbitration award against the at fault driver became final after neither party requested a trial de novo within 20 days of the arbitrator filing the award. *See* RCW 7.06.050(1). First National suggests that once this award was final, Labeaume was not legally entitled to more than the amount of this award. We disagree.

A.    Background on UIM Insurance

In Washington State, all automobile liability insurance policies must include UIM coverage. RCW 48.22.030(2). UIM coverage applies "whenever a tortfeasor's insurance coverage is insufficient to compensate the victim for all damages suffered." *Hamilton*, 107 Wn.2d at 726. Under the UIM insurance statute, an "[u]nderinsured motor vehicle" is a motor vehicle with respect to which all liability coverage "applicable to a covered person after an accident is less than the applicable damages which the covered person *is legally entitled to recover*." RCW 48.22.030(1) (emphasis added). Accordingly, "there are two conditions to underinsured motorist coverage: (1) the 'covered person' must be legally entitled to recover damages; and (2) damages must exceed the limits of liability under all other applicable insurance policies." *Hamilton*, 107 Wn.2d at 726-27.

"Whether the injured insured obtains full recovery of the tortfeasor's liability insurance limits is irrelevant to the determination of underinsurance payments." *Id.* at 727. If an injured insured settles for less than the third-party tortfeasor's liability insurance limits, the UIM insurer is responsible for any damages greater than the third-party tortfeasor's full policy limit. *Id.* at 728. "In other words, the underinsurer always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages." *Id.*

Under RCW 48.22.040(3), insurers have a right "to substitute payment to the insured in the amount of a proposed settlement and subsequently to pursue a recovery against the third party tortfeasor." *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 13, 25 P.3d 997 (2001). Accordingly, a UIM insurance provider can impose a duty on its insureds to notify it of a settlement with a third-party tortfeasor. *Id.*

11

In UIM cases, a jury verdict generally determines the amount of damages the insured is legally entitled to recover from the insurer. *Mencel v. Farmers Ins. Co. of Wash.*, 86 Wn. App. 480, 484-85, 937 P.2d 627 (1997). However, there are some circumstances where a UIM insurer would not be required to pay on a claim. For example, insureds are prevented from recovering UIM benefits where statutory immunity prevents the insured from bringing a claim against the third-party tortfeasor. *Sayan v. United Servs. Auto. Ass'n*, 43 Wn. App. 148, 156, 716 P.2d 895 (1986).

Additionally, in *Neff v. Allstate Insurance Co.*, an insured was collaterally estopped from demanding UIM benefits where, after mandatory arbitration with the third-party tortfeasor, a trial court entered a final judgment reflecting an arbitration award for the insured less than the third-party tortfeasor's policy limit. 70 Wn. App. 796, 799, 803, 855 P.2d 1223 (1993).

Collateral estoppel prevents the relitigation of issues and determinative facts determined in a prior litigation. *Worland v. Kitsap County*, 29 Wn. App. 2d 818, 824, 546 P.3d 446 (2024). One element of collateral estoppel requires a final judgment on the merits. *Id.* Accordingly, collateral estoppel does not attach where there has not been a final judgment on the merits.

B.      Background on Mandatory Arbitration

Mandatory arbitration is a superior court process governed by chapter 7.06 RCW and the superior court mandatory arbitration rules (MAR). *See Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 525-26, 79 P.3d 1154 (2003). Mandatory arbitration is a different process than private arbitration, which is governed by chapter 7.04 RCW. *Id.* at 526.

Under mandatory arbitration, parties have 20 days after the arbitrator files the arbitration award to request a trial de novo in superior court. RCW 7.06.050(1). The relief sought at the trial

de novo is not limited by any prior waiver made for the purposes of arbitration. MAR 7.2(c). However, if the parties do not file a request for a trial de novo within 20 days, "a judgment shall be entered and may be presented to the court by any party, on notice, which judgment when entered shall have the same force and effect as judgments in civil actions." RCW 7.06.050(2). In other words, if no party seeks a trial de novo with the 20-day period, the prevailing party "shall present to the court a judgment on the award of arbitration for entry as the final judgment. A judgment so entered is subject to all provisions of law relating to judgments in civil actions." MAR 6.3.

In this case, the parties agree that 20-day period for seeking a trial de novo after Labeaume's first arbitration against the at fault driver expired on February 16, 2021. According to Labeaume, on January 29, Labeaume and the at fault driver reached a binding settlement for the full amount of the arbitration award. On February 18, Labeaume signed a document releasing the at fault driver from all claims related to the accident in return for paying the full amount of the settlement. However, neither party presented a judgment on the arbitration award to the trial court for entry as the final judgment. *See* MAR 6.3. Instead, on March 9, the trial court filed a stipulation noting that Labeaume's suit against the at fault driver had been "fully settled and compromised" and dismissed the matter with prejudice. CP at 163.

C.      Labeaume Was Eligible for UIM Coverage

        1.      Waiver language, settlement timing, and estoppel

First National argues that Labeaume waived recovery above the at fault driver's $100,000 policy limit during mandatory arbitration, so she was not legally entitled to recover UIM benefits. First National seems to further argue that Labeaume's arbitration award against the at fault driver was final, so both the award and the waiver regarding a $100,000 limit on the arbitration had a

binding, preclusive effect on any subsequent litigation. First National contends that in lieu of a final trial court judgment, the mandatory arbitration award became final after neither party requested a trial de novo within 20 days. We disagree and conclude that there is at least a dispute of material fact as to whether the waiver or mandatory arbitration proceedings became binding on Labeaume and precluded her from later requesting UIM coverage.

First, we note that the waiver here occurred in the context of a "statement of arbitrability" between Labeaume and the at fault driver where Labeaume waived claims above $100,000 "*for the purposes of arbitration*" in that case. CP at 149 (emphasis added) (boldface and capitalization omitted). Under this plain language, the waiver was limited to the arbitration between the at fault driver and Labeaume, and it did not reach any subsequent UIM claim.

Moreover, under *Hamilton*, it is well established that an insured can receive UIM benefits after settling with a third-party tortfeasor for less than or up to their policy limit. 107 Wn.2d at 727. Thus, if Labeaume merely settled with the at fault driver before seeking UIM coverage from First National, then UIM coverage under her own policy was plainly available under *Hamilton.*

Because Labeaume's case against the at fault driver settled and the trial court never entered a final judgment on Labeaume's arbitration award, the award did not preclude her later UIM claim against First National. The language in RCW 7.06.050(2) and MAR 6.3 indicates that only a final judgment on an arbitration award entered by the trial court is treated as a final judgment in the civil action. Here, the trial court entered a stipulation and dismissal with prejudice instead of a final judgment. Accordingly, unlike in *Neff* where the trial court did enter a final judgment on an arbitration award, Labeaume's arbitration award and accompanying waiver could not be the basis

for collateral estoppel preventing a later determination that Labeaume was entitled to greater total damages.

First National argues that the arbitration award against the at fault driver was final. But Labeaume's attorney's declaration stated that the arbitration award was not final at the time the parties arrived at a binding settlement. Under Labeaume's version of the facts, Labeaume could have requested a trial de novo and received damages exceeding the arbitration award and the agreed upon $100,000 arbitration limit in the superior court, but she entered into the settlement instead. Accordingly, prior to expiration of the appeal deadline, Labeaume's potential recovery was not limited by the arbitration amount and her settlement acted like any other settlement would prior to a fact-finder's determination of final damages.

In other words, assuming that Labeaume settled with the at fault driver before the appeal period expired—which we must assume when viewing the facts in the light most favorable to Labeaume—the mandatory arbitration and waiver did not limit the amount she was "legally entitled to recover" under RCW 48.22.030(1). She settled, there was no final binding determination as to what she was "legally entitled to recover," and *Hamilton* allowed her to proceed with a postsettlement UIM claim.

2.    Federal cases

First National cites federal district court cases *Safeco Insurance Co. of Illinois v. Schmid*, No. C17-5224RBL, 2018 WL 1872291 (W.D. Wash. Apr. 19, 2018) (court order); and *McCloud v. Depositors Insurance Co.*, No. C06-5140JKA, 2006 WL 2290757 (W.D. Wash. Aug. 8, 2006) (court order), to support its contention that Labeaume's mandatory arbitration award and waiver were binding and prevented her from bringing a subsequent UIM claim.

15

In *Schmid*, Schmid was involved in two separate car accidents involving two different drivers. 2018 WL 1872291, at *1. Schmid entered into a stipulation with the other drivers for a "*final and binding arbitration of their disputes*" and agreed to "limit enforcement of any arbitration award against either defendant to that defendant's automobile liability policy limits." *Id.* (emphasis added). The parties agreed to withhold the jurisdictional limit from the arbitrator so the arbitrator would feel free to award damages greater than the limit. *Id.* Schmid settled with one driver and received a $378,000 award against the other driver, who had a $250,000 policy limit. *Id.* at *2. That driver paid Schmid $250,000 and the arbitration award was not reduced to a judgment. *Id.* Schmid's UIM insurer declined to pay benefits, arguing that Schmid had already received all amounts he was "legally entitled to recover." *Id.*

The federal district court stated that "entitlement to [UIM] compensation is directly linked to what an insured may legally recover from a tortfeasor." *Id.* at *4. The court then concluded that because Schmid and the other driver agreed to arbitrate with a $250,000 limit on recovery, Schmid was not "legally entitled to recover" anything more than $250,000 from the other driver. *Id.* The court wrote,

> Schmid and [the other driver] effectively created their own "court of limited jurisdiction" by agreeing to an arbitration where the maximum amount [the other driver] would have to pay was $250,000. Their contract leads necessarily to the conclusion that, regardless of the damages awarded by the arbitrator, the maximum recovery available to Schmid was $250,000. Schmid was "legally entitled to recover" a maximum of $250,000, and he has recovered that amount. He is not entitled to any amount under the UIM provision of his Safeco policy, as a matter of law.

*Id.* at *5.

Similarly, in *McCloud*, an insured sued a third-party tortfeasor for damages related to a car crash in a county district court, which had a jurisdictional limit of $50,000. 2006 WL 2290757, at

*2. The jury returned a verdict for $289,824, but given the jurisdictional limit, this amount was reduced, and the court entered a judgment of $50,000 plus costs, which the third-party tortfeasor paid. *Id.* After trial, the insured requested that her insurer pay UIM benefits up to the limits of her policy, which was $100,000. *Id.* at *3.

The federal district court stated that the insured had obtained a judgment against the third-party tortfeasor, and the amount of that judgment was the maximum amount that the insured was legally entitled to recover from the tortfeasor. *Id.* The court concluded that the jurisdictional limit of the county district court "fixed the maximum amount" that the insured could have recovered from the tortfeasor and, therefore, the insured was not entitled to UIM benefits. *Id.* at *4.

We conclude that these federal cases are distinguishable. Unlike here, the parties in *Schmid* agreed to a full and final binding arbitration. In contrast, Labeaume and the at fault driver participated in a mandatory arbitration proceeding that did not lead to a final judgment. Even after the arbitration award was filed (but not reduced to a judgment), the parties could have requested a trial de novo within 20 days, or they could have settled for an amount greater than the $100,000 arbitration limit. In contrast, though Schmid's arbitration award was not reduced to a judgment, the parties agreed on a *final* and *binding* arbitration proceeding, so the limit on the arbitration award was the maximum amount to which Schmid was legally entitled. Accordingly, the lack of a final judgment in *Schmid* is immaterial. *Schmid*'s conclusion does not apply here.

Similarly, the reasoning in *McCloud* does not apply because there, the trial court entered a final judgment against the third-party tortfeasor. Moreover, unlike here, the plaintiffs in *McCloud* chose to litigate their claim subject to the jurisdictional limitations of the county district court when they decided to file in district court.

17

In sum, we conclude that considering the specific terms of Labeaume's waiver and the dispute of material fact about whether Labeaume and the at fault driver reached a binding settlement before the 20-day appeal period expired, the mandatory arbitration proceedings did not legally preclude Labeaume from requesting UIM coverage for damages greater than the at fault driver's $100,000 policy limit. *Schmid* and *McCloud* do not undermine this reasoning. As a result, Labeaume was not prevented under RCW 48.22.030(2) from receiving UIM benefits, assuming as we must that Labeaume's characterization of the timing of the settlement is accurate. The trial court did not err when it denied summary judgment based on First National's waiver and estoppel arguments.

## III. IFCA

First National argues that even if Labeaume were entitled to UIM benefits, the trial court erred as a matter of law by not dismissing Labeaume's IFCA claims. First National contends that because it paid Labeaume the full arbitration award for her damages resulting from the crash before she amended her complaint to bring an IFCA claim, Labeaume was not "unreasonably denied" an insurance benefit as required under RCW 48.30.015(1). Br. of Appellant at 5. Moreover, First National asserts that IFCA's cure provision would be meaningless if full payment did not preclude an IFCA claim. We disagree.

A.     Background on IFCA

"In 2007, the legislature passed, and the voters of this state ratified, the Insurance Fair Conduct Act (IFCA), RCW 48.30.015." *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 672, 389 P.3d 476 (2017). The "specific purpose of IFCA was to provide insureds with another legal resource against their insurer for wrongful denials." *Id.* at 679. Under IFCA, an

insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer" may bring a legal claim against the insurer and can receive actual damages, costs, and attorney fees. RCW 48.30.015(1), (3). The statute authorizes courts to award three times the amount of damages if the insurer, in the course of denying a claim, "either acts unreasonably or violates certain insurance regulations." *Perez-Crisantos*, 187 Wn.2d at 672 (citing RCW 48.30.015 (2)-(3), (5)). These insurance regulations "broadly address unfair practices in insurance, not just unreasonable denials of coverage or benefits." *Id.*[3]

IFCA includes a notice and cure provision for insurers. Under RCW 48.30.015(8)(a), an insured must provide a written 20-day notice to their insurer before filing an IFCA claim. "If the insurer fails to resolve the basis for the action within the [20]-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice." RCW 48.30.015(8)(b).

We note that the Washington Supreme Court has described the application of IFCA as "'vexing.'" *Perez-Crisantos*, 187 Wn.2d at 677 (quoting *Workland & Witherspoon, PLLC v. Evanston Ins. Co.*, 141 F. Supp. 3d 1148, 1155 (E.D. Wash. 2015)). It has also acknowledged that a significant amount of IFCA litigation occurs in federal courts sitting in diversity jurisdiction. *Id.* at 678 n.2. Federal courts, in turn, have noted that the Washington Supreme Court has not answered

---

[3] The Washington Supreme Court has held that "IFCA explicitly creates a cause of action for first party insureds who were 'unreasonably denied a claim for coverage or payment of benefits.'" *Perez-Crisantos*, 187 Wn.2d at 680 (quoting RCW 48.30.015(1)). But IFCA "does not create an independent cause of action for regulatory violations." *Id.* at 684. We are bound by this conclusion. Instead, proof of the listed regulatory violations warrants awarding treble damages for the claimed denial of coverage or benefits. RCW 48.30.015(2), (5).

the question of "whether an IFCA claim can survive after policy limits are paid." *Cohodas v. Cont'l Ins. Co.*, 717 F. Supp. 3d 1008, 1014 (W.D. Wash. 2024).

B.      Denial of Coverage or Benefits

Regarding the first IFCA requirement, denial of coverage or benefits, the Washington Supreme Court held in *Perez-Crisantos* that "IFCA explicitly creates a cause of action for first party insureds who were 'unreasonably *denied* a claim for coverage or payment of benefits,'" and declined to define that available cause of action more broadly. 187 Wn.2d at 680 (emphasis added) (quoting RCW 48.30.015(1)). But Washington State and federal courts have allowed IFCA claims to go forward even if an insurer eventually paid the insured the full amount of UIM benefits to which they were entitled.

In *Leahy v. State Farm Mutual Automobile Insurance Co.*, another driver struck Leahy's car, and the other driver was 100 percent at fault. 3 Wn. App. 2d 613, 617, 418 P.3d 175 (2018). The at fault driver's insurance policy limit was $25,000, and it was split between Leahy and two other injured people. *Id.* Leahy had UIM coverage for $100,000 with State Farm. *Id.* Leahy submitted an estimate of damages for $287,900 and sought the full $100,000 UIM limits of her policy. *Id.* at 619. State Farm declined to pay this amount. *Id.* Leahy sued State Farm for her UIM policy limits. *Id.* The issue went to trial. *Id.* at 620. The jury found in favor of Leahy and concluded her damages were well above the policy limit. *Id.* After the verdict, State Farm paid Leahy her $100,000 policy limit. *Id.*

Leahy then amended her complaint to add claims for IFCA violations for failure to pay her UIM benefits and failure to adequately investigate her claim. *Id.* The trial court granted summary judgment dismissing these claims. *Id.* Division One of this court reversed, concluding that there

were genuine issues of material fact as to whether State Farm's *initial* refusal to pay Leahy UIM benefits, thereby forcing her to litigate her claim, was reasonable. *Id.* at 632.[4]

At least one federal court has distinguished between an actionable denial of a UIM claim and a mere delay. The district court in *Young v. Safeco Insurance Co. of America* stated that the legislative history of IFCA demonstrates that a mere delay in coverage or payment of benefits is *not* sufficient to bring an IFCA claim. No. 20-CV-01816-LK, 2022 WL 4017893, at *9 (W.D. Wash. Sep. 2, 2022) (court order). An original sponsor of IFCA proposed an amendment that would have allowed an insured to sue their insurer for unreasonably "deny[ing] *or delay*[*ing*]" coverage or payment of benefits. Amend. 5726-S AMS WEIN S2651.1 to SUBSTITUTE S.B. 5726, 60th Leg., Reg. Sess. (Wash. 2007) (emphasis added). But the sponsor later submitted a proposed amendment removing the "delay" language, stating, "The act no longer addresses unreasonable delays in payment of insurance benefits." Amend. 5726-S AMS BERK S2868.1 to SUBSTITUTE S.B. 5726, 60th Leg., Reg. Sess. (Wash. 2007); *see also* ENGROSSED SUBSTITUTE S.B. 5726, 60th Leg., Reg. Sess. (Wash. 2007).

---

[4] Labeaume cites two other Washington Court of Appeals decisions for this proposition. In *Anderson v. State Farm Mutual Insurance Co.*, the insured sued their insurer for bad faith and violations of Washington's Consumer Protection Act, ch. 19.86 RCW, after the insurer had paid the insured's full UIM policy limits. 101 Wn. App. 323, 328-29, 2 P.3d 1029 (2000). However, *Anderson* was decided before IFCA was enacted in 2007, so its analysis of bad faith claims is not helpful.

In *Fortson-Kemmerer v. Allstate Insurance Co.*, the insured brought IFCA claims against their insurer after the insurer paid the full amount of an arbitration award determining UIM benefits. 198 Wn. App. 387, 390, 393 P.3d 849 (2017). Division Three considered whether, under res judicata, a UIM insurance claim precludes a subsequent IFCA or bad faith action. *Id.* at 395. The court concluded that insureds could bring IFCA and bad faith claims after resolution of a UIM insurance action. *Id.* at 406. The focus of the case was not whether an IFCA claim survives full payment, but rather the different role that an insurer takes on as a defendant for these types of claims.

However, in *Morella v. Safeco Insurance Co. of Illinois*, the federal district court equated an initial unreasonably low offer with an effective denial of benefits, even where the insurer eventually paid benefits determined by a later arbitration award. In that case, Safeco initially estimated that Morella had more than $10,000 in damages associated with a car crash but only offered Morella $1,500 for a settlement. No. C12-0672RSL, 2013 WL 1562032, at *4 (W.D. Wash. Apr. 12, 2013) (court order). The issue went to arbitration and the arbitrator ultimately awarded Morella $62,000 in damages, which Safeco paid. *Id.* at *2, *4.

The federal district court determined that "an insurer cannot escape IFCA simply by accepting a claim and paying or offering to pay an unreasonable amount." *Id.* at *3. The court explained,

> Where the insurer pays or offers to pay a paltry amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the facts (as known or, in some cases, as would have been known had the insurer adequately investigated the claim), and would not compensate the insured for the loss at issue, the benefits promised in the policy are *effectively denied*. If, on the other hand, the insurer makes a reasonable payment based on the known facts or is making a good faith effort to appropriately value the loss, the fact that the insured did not immediately get all of the benefits to which it may ultimately be entitled does not establish an "unreasonable denial of payment of benefits."

*Id.* (emphasis added).

The court concluded that Safeco's $1,500 settlement offer was, as a matter of law, an unreasonable denial of payment of benefits. *Id.* at *4. The court further noted that it was not "overly persuaded" by Safeco's eventual payment to Morella for his losses: "The vagaries of litigation/arbitration are hard to predict, and, while the ultimate outcome may inform the analysis, hindsight is not the most accurate lens through which to evaluate the reasonableness or

unreasonableness of a pre-suit settlement offer." *Id.* Instead, the court focused on what Safeco knew or should have known when it made its initial offer. *Id.*

We adopt reasoning similar to that in *Morella*. An insured may bring an IFCA claim where there is an effective denial of benefits. However, IFCA does not apply where an insurer accepts coverage but does not pay immediately because of a *reasonable* dispute over the amount owed. For example, in *Young*, Young obtained a landlord protection insurance policy from Safeco before renting a property he owned to a tenant. 2022 WL 4017893, at *1. The tenant passed away and Young discovered that the tenant had made several unauthorized alterations and improvements to the property. *Id.* at *2. Young requested insurance coverage from Safeco for "'vandalism'" of his property, which Safeco denied because there was no evidence of the tenant's malicious intent. *Id.* (quoting record).

After Young sent an IFCA notice, Safeco agreed to "'cure'" its initial denial of coverage pending an estimate of the cost to repair the renovations. *Id.* at *3 (quoting record). Safeco "asked [Young] to provide an estimate, requested an inspection when [Young] failed to promptly provide that estimate, and then rejected the inflated estimate that [Young] finally provided." *Id.* at *8. Eventually, Safeco paid Young the full amount of a revised final estimate of damages. *Id.* at *5. Safeco then moved for summary judgment on Young's IFCA claim. *Id.* at *6.

Citing IFCA's legislative history, the trial court concluded that Safeco was not liable for a denial of payment because, "'Where, as here, the delay in payment is due to a dispute over the amount owed, the delay alone does not constitute a denial of payment under IFCA.'" *Id.* at *7 (quoting *Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *6 (W.D. Wash. Apr. 16, 2014) (court order)). The *Young* court distinguished *Young* from *Morella*,

noting that in *Young*, Safeco did not effectively deny payment of benefits by making an unreasonably low offer—or any offer; Safeco accepted coverage and simply requested a reasonable estimate from Young, which Young failed to provide. *Id.* at \*8.

Thus, while the legislative history of IFCA establishes the legislature did not intend IFCA recovery for mere delay of UIM benefits, both Washington and federal courts have allowed IFCA claims for the *effective* denial of a UIM claim—for example, through an unreasonably low settlement offer.

C.     Available Damages Under IFCA

Regarding IFCA damages, in *Beasley v. Geico General Insurance Co.,* this court determined that IFCA allows for extracontractual damages arising from an unreasonable denial in addition to the amount due under the insured's policy, including noneconomic damages. 23 Wn. App. 2d 641, 666, 517 P.3d 500 (2022). Beasley was injured in a car accident while he was a passenger in a friend's vehicle. *Id.* at 644. Beasley demanded the $100,000 policy limit from the driver's UIM insurance coverage, and the insurer offered to pay $10,000, which Beasley rejected. *Id.* Beasley then brought suit against the insurer, claiming in part that it had violated IFCA. *Id.* This court held that IFCA does allow for noneconomic damages, like emotional distress, caused by unreasonable denial of an insurance claim. *Id.* at 666.

Thus, under current Washington law, a plaintiff making an IFCA claim can recover both the benefits due under their policy's UIM coverage, as well as other extracontractual damages (including noneconomic damages) arising from the insurer's decision to deny a claim or effectively deny a claim by offering only an unreasonably minimal settlement.

D.       Cure of IFCA Violation by Payment of Benefits

However, even where the insurer *initially* denies coverage or payment of benefits, it is unclear under existing law whether an insurer's payment of the full amount of benefits due cures the denial such that the insured cannot bring an IFCA claim.

Under RCW 48.30.015(1), an insured may bring an IFCA claim if they are "unreasonably denied a claim for coverage or payment of benefits by an insurer." However, IFCA also includes a notice and cure provision for insurers. Under RCW 48.30.015(8)(a), an insured must provide a written 20-day notice to their insurer before filing an IFCA claim. "If the insurer fails to resolve the basis for the action within the [20]-day period after the written notice by the first party claimant, the first party claimant may bring the action without any further notice." RCW 48.30.015(8)(b).

Although the *Leahy* court allowed the IFCA claim in that case to proceed, even after the policy limit had been paid, that case did not expressly address the notice and cure provision in IFCA. 3 Wn. App. 2d at 132. Moreover, confusion about how to apply the cure provision was evident in *Morella*. There, the federal district court certified a question to the Washington Supreme Court asking how actual damages under IFCA are calculated or defined under IFCA where the insured received the full amount of an arbitration award regarding the relevant insurance claim before initiating an IFCA action. *Morella*, 2013 WL 1562032, at *5. However, the Washington Supreme Court never answered the question because the case settled. *See Beasley*, 23 Wn. App. 2d at 653 n.8.

Two fairly recent federal district court cases demonstrate the competing perspectives on whether IFCA claims can survive full payment of insurance benefits. First, in *Cohodas*, the insured demanded her $1,000,000 policy limit for UIM coverage. 717 F. Supp. 3d at 1010. The insurer did

not immediately respond. *Id.* Eventually, when the insurer finally responded, it was generally uncooperative. *Id.* at 1010-11. The insured sued the insurer and the insurer paid her the $1,000,000 policy limit. *Id.* at 1011. The insured then amended her complaint to include an IFCA claim. *Id.* The insurer moved for summary judgment to dismiss the claim. *Id.*

The federal district court acknowledged confusion about whether an IFCA claim can survive payment of policy limits. *Id.* at 1014-15. However, given the lack of binding authority and the decision in *Leahy* allowing an IFCA claim despite posttrial payment of the policy limit, the *Cohodas* court declined to prohibit IFCA recovery where the insurer has paid the insured's policy limit. *Id.* Considering the evidence in the light most favorable to the insured, the court could not find that the insurer's failure to pay initially was because of a "good faith dispute" about the value of the insured's claim, so the eventual payment of policy limits was not "a categorical bar to her IFCA claim." *Id.* at 1015-16. Accordingly, there were genuine issues of material fact about whether the insurer "unreasonably denied coverage or benefits by virtue of its handling of [the insured's] claim, including its delay in payment." *Id.* at 1016. The court thus denied the insurer's motion for summary judgment. *Id.* at 1016.[5]

In contrast, in *Young*, the federal district court concluded that even where an insurer's conduct was unreasonable, "an IFCA claim for a denial of payment 'cannot survive' when the insurer ultimately pays the claimant's full demand." 2022 WL 4017893, at *8. The trial court cited

---

[5] On reconsideration, the trial court noted that during oral argument, the insurer argued for the first time that allowing IFCA claims after the full payment of policy limits would render IFCA's cure provision meaningless. *Cohodas v. Cont'l Ins. Co.*, No. C22-1561-KKE, 2024 WL 2723811, at *2 (W.D. Wash. May 28, 2024) (court order). However, the court declined to address the argument, relying on failure to raise it in briefing. *Id.*

other Washington federal district court cases concluding there was not a valid IFCA claim where the insurer paid the insured's full policy limit. *Id.* at \*8.[6]

In sum, Washington state courts have not directly answered whether full payment within the notice period prevents IFCA claims from moving forward. Federal district courts are split on whether IFCA's cure provision precludes IFCA claims from advancing where benefits have been paid in full.

E.      Labeaume's IFCA Claims

Here, First National paid Labeaume the full amount of her arbitration award for UIM benefits after an arbitrator determined the amount of damages Labeaume was entitled to, but it did so before Labeaume brought her IFCA notice and claim.

Under the plain language and legislative history of RCW 48.30.015(1), an IFCA claim requires that an insurer *deny*, and not just delay, coverage or payment of benefits to the insured. Here, there is sufficient evidence to create a genuine dispute of material fact as to whether First National's initial refusals to pay UIM benefits, amounted to an effective denial of Labeaume's claim that was unreasonable. Accordingly, we conclude that there is an issue of fact as to whether First National unreasonably denied Labeaume insurance benefits under IFCA.

Turning to the notice and cure provision, neither party challenges that Labeaume fulfilled the IFCA notice requirement.

---

[6] *See Smith v. State Farm Mut. Auto. Ins. Co.*, No. C12-1505-JCC, 2013 WL 12107577 (W.D. Wash. Jan. 29, 2013) (court order); *Neyens v. Am. Fam. Mut. Ins. Co.*, No. C12-1038JLR, 2012 WL 5499870 (W.D. Wash. Nov. 13, 2012) (court order); *Hann v. Metro. Cas. Ins. Co.*, No. 12-5031 RJB, 2012 WL 3090977 (W.D. Wash. June 29, 2012) (court order).

As discussed above, no Washington State case definitively decides whether First National's payment of the full arbitration award for Labeaume's UIM benefits before expiration of the IFCA notice (and in fact before the IFCA notice itself) "cured" its initial denial of benefits, thereby preventing Labeaume from bringing the IFCA claims. Despite this lack of precedent, we agree with the reasoning in *Cohodas* and *Leahy* and hold that IFCA claims can survive payment of the full amount of an award or full amount of benefits under the relevant policy in at least some circumstances. Otherwise, an insurer could always block an insured from recovering *any* damages under IFCA by paying the full amount of benefits claimed or due within the cure period. And in *Beasley*, this court determined that IFCA claims can include extracontractual economic and noneconomic damages *caused by* unreasonable denials of coverage or benefits, not just the amount of the denied benefits themselves. But such damages could be difficult to fully ascertain before the injured party is certain what they are ultimately entitled to under the UIM portion of their policy.

Despite First National's contentions, this conclusion does not render IFCA's cure provision meaningless. Having received an IFCA notice after payment of insurance benefits, an insurer can cure the violation by paying the amount of extracontractual damages caused by its initial unreasonable denial.

During oral arguments, First National suggested that an insured can only bring a valid IFCA notice soon after an initial denial of benefits. Wash. Ct. of Appeals oral arg., *Labeaume v. First Nat'l Ins. Co. of Am.*, No. 60280-2-II (Apr. 30, 2026), at 10 min., 30 sec. to 11 min., 22 sec., *video recording by* TVW, Washington State's Public Affairs Network.[7] According to First National, in that scenario, if the insurer fails to cure the damages stated in the notice, then the insured can

---

[7] https://tvw.org/video/division-2-court-of-appeals-2026041204/?eventID=2026041204

make an IFCA claim for extracontractual damages resulting from an initial effective denial even when benefits are eventually paid.

However, this puts an unreasonable burden on insureds to specifically claim extracontractual damages resulting from an insurer's unreasonable conduct before the damages even occur. For example, an insurer might provide an unreasonably low offer, and in response the insured brings a breach of contract claim. At this point, the insured has not necessarily experienced economic damages (like interest charges or debt collection fees arising from inability to pay medical bills) or noneconomic damages (like emotional distress) resulting from the insurer's unreasonable denial of benefits. These damages might accrue during ensuing litigation with the insurer that ultimately results in a determination of insurance benefits and the insurer's payment of those benefits. After this extended process, even if the insurer pays the benefits, the insured should still be entitled to request treble damages *resulting from* the denial and litigation—as well as attorney fees and costs for the litigation—which they could not have necessarily anticipated. This reading and application of IFCA best aligns with IFCA's primary purpose to protect insureds. *See Perez-Crisantos*, 187 Wn.2d at 679 (stating the "specific purpose of IFCA was to provide insureds with another legal resource against their insurer for wrongful denials").

Here, the arbitration award only determined Labeaume's injuries resulting from the car crash, not from First National's handling of her UIM claim. Labeaume then gave an IFCA notice related to First National's handling of her claims, and First National took no action to cure the damages resulting from its alleged IFCA violations. Subsequently, Labeaume filed an amended complaint bringing IFCA claims and requesting extracontractual economic and noneconomic

damages caused by First National's conduct. Because Labeaume's IFCA claims were not fully cured by First National's payment of the arbitration award, they survive summary judgment.

We note that here, the arbitrator determined that First National owed Labeaume much less than her $250,000 demand for UIM benefits. This may be a factor for a fact-finder to consider when determining whether First National effectively denied Labeaume's UIM claim or acted unreasonably. However, this outcome does not mean First National acted reasonably as a matter of law. First National initially denied Labeaume's request for any coverage without conducting an independent investigation of her damages, for example. And even if Labeaume were unlikely to prevail in her IFCA claim, that would not mean First National is entitled to summary judgment dismissing her claim as a matter of law.

Accordingly, we hold that the trial court was correct to conclude that Labeaume's IFCA claim survived summary judgment because there was a genuine issue of material fact as to whether First National unreasonably denied her UIM benefits, forcing her to litigate them in arbitration, and whether she incurred damages as a result of First National's denial.

CONCLUSION

We affirm.

60380-2-II

GLASGOW, J.

We concur:

CRUSER, J.

VELJACIC, C.J.

31